**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Edward L.,[1]

Plaintiff,

v.

Frank Bisignano, Commissioner of the Social Security Administration,

Defendant.

Case No. 25-cv-2988 (NEB/JFD)

**REPORT AND RECOMMENDATION**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Edward L. seeks judicial review of a final decision by the Defendant Commissioner of the Social Security Administration, denying Plaintiff's applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). The matter is now before the Court on Plaintiff's Brief (Dkt. No. 14), Defendant's Brief (Dkt. No. 15), and Plaintiff's Reply (Dkt. No. 16). Plaintiff argues that the final decision should be reversed for three reasons: (1) the administrative law judge ("ALJ") who issued the decision did not include a necessary limitation for Plaintiff's defibrillator in the residual functional capacity ("RFC") assessment; (2) the ALJ did not adequately assess the persuasiveness of medical source opinions; and (3) lifting and carrying restrictions in the RFC are inconsistent with sedentary-level work. The Commissioner asks the Court to affirm the decision. As set forth fully below, the Court

[1] The District of Minnesota has adopted a policy of using only the first name and last initial of nongovernmental parties in Social Security cases.

concludes that the ALJ erred in the first two respects and recommends reversing the final decision and remanding the matter for further administrative proceedings.

## I. Background

People with disabilities can qualify for financial support from the Social Security Administration ("SSA") through one or both of its assistance programs: the DIB Program under Title II of the Social Security Act and the SSI Program under Title XVI of the Act. *See Smith v. Berryhill*, 587 U.S. 471, 475 (2019). DIB is a program that provides support to those who worked and had sufficient social security taxes withheld from their pay over their working life to qualify for coverage if they become disabled. *See id.*; 42 U.S.C. § 423(a) (guaranteeing benefits for insured disabled people). The SSI Program is a public assistance program that provides support to people with disabilities, whether or not they have paid social security taxes, who demonstrate financial need. *See Smith*, 587 U.S. at 475; 42 U.S.C. § 1381a (guaranteeing support to eligible "aged, blind, or disabled" people); 20 C.F.R. § 416.110 (explaining program's purpose).

Plaintiff filed for SSI and DIB on July 5, 2022, alleging disability commencing on August 10, 2020. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 10.)[2] Plaintiff later amended the disability onset date to February 17, 2021. (R. 10.) Plaintiff's alleged impairments were "heart attack, status post implantation and replacement of defibrillator, low blood pressure,

---

[2] The Social Security administrative record is filed at Dkt. No. 8. The record is consecutively paginated on the lower right corner of each page, and the Court's record citations are to those page numbers, not the page numbers assigned by CM/ECF or PACER.

cardiogenic vertigo, congestive heart failure, gastroesophageal reflux disease, vertigo, asthma, and ADHD." (R. 59.)

Plaintiff's SSI and DIB applications were denied at both the initial and reconsideration stages of review. He requested an administrative hearing, which was held by an ALJ on March 13, 2024. (R. 34.) The ALJ issued a written decision on April 5, 2024, finding that Plaintiff was not disabled. (R. 7–19.) The ALJ followed the familiar five-step sequential analysis described in 20 C.F.R. § 404.1520 and § 416.920 in making that determination.[3] At each step, the ALJ considered whether Plaintiff was disabled based on the criteria of that step. If he was not, the ALJ proceeded to the next step.

The ALJ first determined that Plaintiff had engaged in substantial gainful activity from October 15, 2021 through June 26, 2022, but there was also a continuous 12-month period during which Plaintiff did not engage in such activity. (R. 12, 13.) The ALJ therefore proceeded to the second step, where he found that Plaintiff had the severe impairments of cardiomyopathy and coronary artery disease. (R. 13.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. part 404, subpart P, appendix 1. (R. 13.)

[3] The five steps are "(1) whether claimant is engaged in substantial gainful activity, (2) whether claimant has a severe impairment, (3) whether the impairment meets or equals the severity of a listed impairment, (4) whether claimant has the residual functional capacity to perform past relevant work activity, and (5) if claimant is unable to do past work, whether claimant can perform other work." *Delph v. Astrue*, 538 F.3d 940, 946 (8th Cir. 2008) (citing *Smith v. Shalala*, 987 F.2d 1371, 1373 (8th Cir. 1993)).

Between steps three and four, the ALJ assessed Plaintiff's RFC, which is a measure of "the most [Plaintiff] can still do despite [Plaintiff's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ assessed Plaintiff with the RFC

> to perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a) except: the claimant can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. The claimant can sit for about 6 hours out of an 8-hour workday. The claimant can stand and/or walk for about 2 hours out of an 8-hour workday. The claimant can never climb ladders, scaffolds or ropes. The claimant can occasionally balance, crouch, kneel, stoop, crawl and climb ramps or stairs. The claimant must avoid concentrated exposure to extreme cold or heat, humidity, vibration and work hazards.

(R. 14.)

As part of the RFC assessment, the ALJ considered Plaintiff's testimony that he had a defibrillator[4] and could not be around magnetic fields. (R. 15.) The ALJ also considered the prior administrative medical findings of two state agency medical consultants,[5] Joyce Warkentien, M.D., and Roxana Merz, M.D., both of whom opined that Plaintiff should "[a]void work around strong magnetic fields." (R. 64, 73, 82, 91.) The ALJ deemed a different finding of Dr. Warkentien and Dr. Merz (that Plaintiff was limited to light work

[4] The ALJ used the word "pacemaker" to describe Plaintiff's implanted device, but Plaintiff's testimony and the majority of the medical records referred to the device as a "defibrillator." The parties used the words "pacemaker," defibrillator," and "implantable cardioverter-defibrillator" ("ICD") in their briefs. The Court will use the term "ICD" in this Report and Recommendation.

[5] "Prior administrative medical findings" are findings "about a medical issue made by our Federal and State agency medical and psychological consultants" at the initial or reconsideration stages of review. 20 C.F.R. § 404.1513(a)(5). "Although the term is broader in scope than a 'medical opinion,' . . . the terms are often used interchangeably . . . ." *Elaine B. v. Bisignano*, No. 25-CV-1215-JWL, 2026 WL 2110627, at *2 (D. Kan. July 22, 2026).

activity) unpersuasive, but the ALJ did not discuss their other findings (including the magnetic-field limitation) or their opinions as a whole. (*See* R. 17.) The ALJ's consideration of Dr. Warkentien's and Dr. Merz's opinions reads in full:

> The undersigned finds the State agency medical consultants' assessments for limitations to a range of light work activity to be unpersuasive. . . . Those limitations are generally consistent with the claimant's conservative course of treatment and the diagnostic testing completed during the period that the consultants reviewed through the reconsideration date. However, the undersigned finds that, with consideration given to the claimant's testimony and the need for the augmentation of his medications as well as his reduced activities of daily living reported, the evidence admitted at the hearing level is more consistent with a range of sedentary work activity. . . .

(R. 17.)

Plaintiff had no past relevant work for the ALJ to consider at step four. (R. 17.) The ALJ therefore proceeded to step five of the sequential evaluation to consider whether Plaintiff could make a successful adjustment to other work. (R. 18.) Relying on the hearing testimony of a vocational expert, the ALJ concluded that Plaintiff could work as a final assembler, touch-up screener, or charge account clerk. (R. 18.) Therefore, Plaintiff was not disabled under the Social Security Act. (R. 18.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

## II. Legal Standards

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C.

§ 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB or SSI, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A).

Certain regulations govern the SSA's consideration of prior administrative medical findings. *See* 20 C.F.R. §§ 404.1520c, 416.920c. When a medical source such as a state

agency medical consultant makes administrative medical findings, the ALJ must consider the persuasiveness of the findings "using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Those five factors are supportability, consistency, relationship with the claimant, specialization, and any other relevant considerations. 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). The two most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed." *Svendsen v. Kijakazi*, No. 1:21-CV-1029-CBK, 2022 WL 2753163, at *8 (D.S.D. July 14, 2022). The ALJ "may, but [is] not required to," explain how the remaining factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

An ALJ assesses supportability by analyzing how well the medical source's prior administrative medical findings are justified by that source's use of objective medical evidence. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Simply put, the more objective evidence a medical source adduces to support the findings, the more persuasive the findings are.

An ALJ assesses consistency by considering that "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical

sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). That is, the ALJ evaluates whether the prior administrative findings are consistent with evidence from sources other than the source who rendered the opinion.

In other words, supportability looks to how well the medical source justifies their own opinion with evidence from the record, and consistency looks to how well the medical source's opinion fits with other sources from the record.

The ALJ must not only consider the regulatory factors but also articulate that consideration. *See* 20 C.F.R. § 416.920c(a) ("We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section."); 20 C.F.R. § 404.1520c(a) (same); 20 C.F.R. § 416.920c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."); 20 C.F.R. § 404.1520c(b) (same). Given that the supportability and consistency factors are the most important factors to the persuasiveness determination, an ALJ "*will explain* how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings." 20 C.F.R. § 416.920c(b)(2) (emphasis added); *see* 20 C.F.R. § 404.1520c(b)(2). The ALJ's failure to articulate how the ALJ considered the consistency factor or the supportability factor is a legal error that warrants remand. *Susan H. v. Kijakazi*, No. 21-CV-2688 (ECT/ECW), 2023 WL 2142786, at *3 (D. Minn. Feb. 21, 2023); *Michael B. v. Kijakazi*, No. 21-CV-1043 (NEB/LIB), 2022 WL

4463901, at *2 (D. Minn. Sept. 26, 2022); *Joel M. B. v. Kijakazi*, No. 21-CV-1660 (PAM/ECW), 2022 WL 1785224, at *3 (D. Minn. June 1, 2022) (citing *Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020)).

## III. Discussion

### A. The ALJ Erred by Not Including in the RFC a Limitation Against Working Around Strong Magnetic Fields or Explaining the Limitation's Omission.

Plaintiff argues that the ALJ erred by not including in the RFC Dr. Warkentien's and Dr. Merz's opined limitation against working around strong magnetic fields. (Pl.'s Br. at 10.) Plaintiff argues that the limitation is necessary to ensure the proper functioning of his ICD. (*Id.*) The Commissioner offers several arguments in response: that the ALJ found Plaintiff's testimony about his ICD not fully supported by or consistent with the evidence, that the ALJ deemed Dr. Warkentien's and Dr. Merz's prior administrative medical findings unpersuasive, that the ALJ included other environmental limitations in the RFC, that Plaintiff worked as a forklift operator after his ICD was implanted, and that, even if the ALJ erred, remand would not be warranted because Plaintiff could still perform the representative jobs identified at step five of the sequential evaluation. (*Id.* at 8–10.)

Beginning with the testimony, Plaintiff testified in relevant part that he was unable to work primarily due to "magnetic forcefields. I'm not able to run hardly anything anymore unless it's my cordless drill. . . .I'm not even allowed to work on vehicles anymore. . . . My defibrillator on my side that -- they said that something to do with the magnetic forcefield will deactivate it." (Tr. 45.) The ALJ acknowledged this testimony but

found that, overall, Plaintiff's statements concerning the intensity, persistence, and limiting effects of all his symptoms were not entirely consistent with other evidence. (R. 15.)

The Court finds that the ALJ's blanket statement about Plaintiff's symptoms overall is not applicable to the limitation against working around strong magnetic fields. While parts of Plaintiff's testimony (about the cordless drill or working on vehicles, for example) might be inconsistent with other evidence in the record, there is no evidence that Plaintiff can work around strong magnetic fields. The Commissioner has not identified any such evidence, and Dr. Warkentien and Dr. Merz limited Plaintiff from working around strong magnetic fields. Moreover, the limitation against working around strong magnetic fields is not a subjective symptom. Plaintiff is not claiming he mentally or physically cannot work near magnetic fields. Rather, he must avoid working near strong magnetic fields because they could affect his ICD. For example, "exposure to strong electrical or magnetic fields . . . . can trigger or reprogram an implanted cardiac defibrillator, resulting in inappropriate shocks." 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.00(F)(4)(b). Furthermore,

> certain work-related precautions are imposed on patients with pacemakers.[6] Those precautions sometimes include limiting strenuous activity, including lifting, carrying, pulling, and pushing objects over 10 pounds; reaching or stretching above the head; and, sudden, jerky arm movements. Other common restrictions apply to workplace use of powerful electromagnetic pulses that might interfere with the operation of the pacemaker. Strong magnetic fields, electrical cables carrying more than 10,000 amperes of current, alternating welding currents, powerful radio transmitters, TV and radar transmitters, power tools and assembly line robots, induction furnaces,

[6] "Most implantable cardiac defibrillators have rhythm-correcting and pacemaker capabilities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.00(F)(4)(b). Thus, the Court will presume that the work-related precautions applicable to pacemakers also apply to Plaintiff's ICD.

> and electric generating plants or substations interfere with pacemakers. Digital cellular telephones and anti-theft devices also have the potential to interfere with pacemakers.

*Covington v. Astrue*, No. CIV. 11-2193, 2012 WL 4904386, at *3 (W.D. Ark. Oct. 15, 2012). The Court finds that the ALJ's assessment of Plaintiff's statements about his symptoms was not a basis on which to reject Dr. Warkentien's and Dr. Merz's limitation against working around strong magnetic fields.

The Court next considers the Commissioner's observation that Plaintiff worked as a forklift operator for nine months after his ICD was implanted. The Commissioner does not explicitly state what inference the Court should draw from this observation, but offers it as an example of substantial evidence the ALJ identified in evaluating Plaintiff's subjective symptoms. (Def.'s Br. at 9.) The Court sees two problems with the Commissioner's position. First, the need to avoid strong magnetic fields due to an implanted ICD is not a subjective complaint, as discussed above. Second, the fact that Plaintiff worked a forklift operator job for nine months without having an incident with his ICD does not mean that he should have or that it was safe to do so.

The Commissioner next argues that the ALJ deemed Dr. Warkentien's and Dr. Merz's prior administrative medical findings to be unpersuasive, which was an implicit rejection of the magnetic-field limitation. More accurately, the ALJ found one limitation unpersuasive—the medical consultants' "assessments for limitations to a range of light work activity." (R. 17.) The ALJ did not make a specific persuasiveness finding about the magnetic-field limitation, nor did the ALJ conclude the consultants' opinions were

unpersuasive overall. Granted, an ALJ is not required to discuss each limitation contained in a medical source's opinion, even when the ALJ finds an opinion persuasive. But in this circumstance, the Court is left to guess whether the ALJ considered and rejected the magnetic-field limitation, or neglected to consider it at all.[7]

The Court now turns to the Commissioner's argument that the ALJ included some environmental limitations in the RFC but that the "decision as a whole" did not support a limitation against exposure to strong magnetic fields. (Def.'s Br. at 9.) The Court does not agree. The ALJ concluded in the RFC that Plaintiff "must avoid concentrated exposure to extreme cold or heat, humidity, vibration, and work hazards" (R. 14), but the ALJ did not explain why he agreed with these limitations but not the magnetic-field limitation. Nor did the ALJ identify in the decision other evidence showing that Plaintiff could work around strong magnetic fields.

With respect to the "work hazards" element of the limitation in the RFC, the Commissioner argues that the phrase "work hazards" necessarily encompassed the magnetic-field limitation. Again, there is no evidence to support that. On the other hand, Social Security Ruling ("SSR") 96-9p defines occupational "hazards" as "moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high,

[7] That is not the only problem with the ALJ's consideration of the prior administrative medical findings. The ALJ did not explain how he considered the supportability factor, as required by 20 C.F.R. § 404.1520c(b)(2) and § 416.920c(b)(2). The ALJ explicitly addressed the consistency factor, but the ALJ did not articulate his consideration of how well Dr. Warkentien and Dr. Merz justified their medical findings with objective medical evidence and supporting explanations. The Court discusses this problem in greater detail in Part III.B.

exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals." SSR 96-9p, 1996 WL 374185, at *9 (SSA July 2, 1996). Magnetic fields are not included in the definition of "hazards." Taking the analysis one step further and assuming that strong magnetic fields are properly considered work hazards, Dr. Warkentien and Dr. Merz opined that Plaintiff was limited from not just *concentrated* exposure to "work hazards," but from *even moderate* exposure. (R. 64.) So even if the ALJ intended for the magnetic-field limitation to be included in the work-hazards limitation, the ALJ's limitation to *concentrated* exposure does not correspond with the amount of exposure the medical consultants opined that Plaintiff must be limited from—*even moderate* exposure.

Finally, the Commissioner argues that, even supposing the ALJ erred, remand would not be warranted because, based on the testimony of the vocational expert, Plaintiff could still perform the representative jobs identified at step five of the sequential evaluation. The Court finds no evidence of that. The ALJ asked the vocational expert to consider a hypothetical person of Plaintiff's age, education, and work experience, with various physical restrictions, and who "must avoid all exposure to workplace hazards." (R. 55.) The ALJ did not include a magnetic-field limitation in the hypothetical questions posed to the vocational expert, and thus, the vocational expert did not testify that Plaintiff could work in any of the representative jobs with the limitation. To the extent the Commissioner suggests that magnetic fields are necessarily workplace hazards and therefore implicit in the condition to "avoid all exposure to workplace hazards" (Def.'s Br.

at 10), the Commissioner cites no authority for that conclusion, and SSR 96-9p all but forecloses it.

In sum, the ALJ did not include in the RFC Dr. Warkentien's and Dr. Merz's opined limitation against working around strong magnetic fields and did not explain why it was omitted. (Pl.'s Br. at 10.) The omission of the limitation was not supported by substantial evidence in the record as a whole, and insofar as the omission was based on the ALJ's finding that the prior administrative medical findings were not persuasive, it was a legal error. Consequently, the Commissioner's decision should be reversed and remanded for specific consideration of the magnetic-field limitation and its effect on Plaintiff's RFC and the jobs he could perform.

**B. The ALJ Did Not Adequately Assess the Persuasiveness of Dr. Warkentien's and Dr. Merz's Prior Administrative Medical Findings.**

Plaintiff argues that the ALJ did not articulate his consideration of the supportability factor in assessing the persuasiveness of Dr. Warkentien's and Dr. Merz's prior administrative medical findings, as required by 20 C.F.R. § 404.1520c(b)(2) and § 416.920c(b)(2). The Commissioner does not argue otherwise.

As the Court observed in footnote 7, the ALJ explicitly addressed the consistency factor but did not articulate his consideration of how well Dr. Warkentien and Dr. Merz justified their medical findings with objective medical evidence and supporting explanations. An ALJ may not disregard the regulatory requirement to consider and articulate his consideration of the supportability factor. *See Joel M. B.*, 2022 WL 1785224,

at *3. An ALJ's failure to articulate his consideration of the supportability factor can constitute a legal error that warrants remand. *Michael B.*, 2022 WL 4463901, at *2.

In addition, the ALJ did not articulate how persuasive each source's prior administrative medical findings were overall or whether the ALJ considered but rejected the magnetic-field limitation. The Court acknowledges that an ALJ is not required to discuss each limitation contained in a medical source's findings, but without an articulation of persuasiveness for the opinion overall, the Court can only speculate whether the magnetic-field limitation factored in the ALJ's decision or if the ALJ considered it at all.

These errors are not harmless because the Court cannot determine whether the ALJ would have made the same decision even if he had followed the applicable regulations. *See Lucus*, 960 F.3d at 1070. The Court therefore recommends that the matter be remanded to the SSA for further consideration and articulation of the persuasiveness of Dr. Warkentien's and Dr. Merz's prior administrative medical findings, particularly the limitation to avoid work around strong magnetic fields, pursuant to 20 C.F.R. § 404.1520c and § 416.920c.

**C. The Lifting and Carrying Restrictions in the RFC Are Exceptions to the Limitations of Sedentary Work, Not Inconsistencies.**

Plaintiff argues that the RFC is internally inconsistent because the lifting and carrying limitations are inconsistent with sedentary-level work. (Pl.'s Br. at 26.) "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). The regulatory definition of sedentary work also limits walking and standing. The RFC

assessed by the ALJ limited Plaintiff to sedentary work, "except: the claimant can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently." (R. 14) (emphasis added). In response to Plaintiff's argument, the Commissioner points out that the lifting and carrying limitations in the RFC were exceptions from the regulatory definition of "sedentary," not inconsistencies. (Def.'s Br. at 11.)

An exception is not an inconsistency, and a plain reading of the RFC shows that the ALJ made an exception. The ALJ excepted the lifting and carrying limitations from the definition of sedentary work because the ALJ had determined that Plaintiff could lift and carry more than the definition allowed, but the ALJ retained the walking and standing limitations of the definition. With respect to Plaintiff's argument that the RFC is not clear whether he can lift or carry small articles occasionally or frequently, that would depend on the weight of the item. As to Plaintiff's suggestion that it would be incongruous for him to lift or carry items weighing 9.99 pounds frequently but items weighing 10 pounds occasionally, the Court notes that the 10-pound limit is set by regulation. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a). The parameters of limitations must be drawn somewhere, and an ALJ is bound to follow that boundary. The RFC is not internally inconsistent or unclear.

## IV. Recommendation

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. The relief requested in Plaintiff's Brief (Dkt. No. 14) and Plaintiff's Reply Brief (Dkt. No. 16) be **GRANTED**;

2. The relief requested in Defendant's Brief (Dkt. No. 15) be **DENIED**;

3. The final decision of the Commissioner of the Social Security Administration be **REVERSED** and the matter **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings as set forth above; and

4. **JUDGMENT BE ENTERED ACCORDINGLY**.

Date: July 24, 2026

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

**NOTICE**

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and therefore is not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to D. Minn. LR 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within 14 days. A party may respond to objections within 14 days of being served a copy. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).